1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   MEGAN STENTZ,

8                           Plaintiff,        NO:  1:15-CV-3092-RMP

        v.                                    ORDER GRANTING IN PART
9                                             PLAINTIFF'S MOTION FOR
    CAROLYN W. COLVIN, Acting                 SUMMARY JUDGMENT AND
10  Commissioner of Social Security           REMANDING FOR FURTHER
    Administration,                           PROCEEDINGS
11
                            Defendant.
12

13        BEFORE THE COURT are Plaintiff Megan L. Stentz' Motion for Summary

14   Judgment, ECF No. 15, and Defendant Commissioner of Social Security Carolyn

15   W. Colvin's Motion for Summary Judgment, ECF No. 16.  The Court has reviewed

16   the motions, Ms. Stentz' reply memorandum, ECF No. 17, the administrative

17   record, and is fully informed.

18                            **BACKGROUND**

19        Megan L. Stentz protectively filed an application for Disability Insurance

20   Benefits ("DIB") on April 24, 2012, and an application for Supplemental Security

21   Income ("SSI") on May 2, 2012.  ECF No. 11-2 at 14, Tr. 13.  Ms. Stentz asserted

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 1

a disability onset date of January 30, 2008.  *Id*.  Both DIB and SSI were initially denied on August 8, 2012, and upon reconsideration on December 14, 2012.  *Id*. Ms. Stentz requested a hearing before an Administrative Law Judge ("ALJ").  *Id*. The hearing was held via video conference before ALJ Kimberly Boyce on February 12, 2014.  *Id*.  Ms. Stentz was represented by counsel Cory J. Brandt and testified during the hearing.  *Id*.  Kimberly Mullinax, a vocational expert ("VE"), also testified.  ECF No. 11-2 at 67–70, Tr. 66–69.

The ALJ found that Ms. Stentz had not engaged in substantial gainful activity as defined in 20 C.F.R. §§ 404.1572(a) and 416.920(b), since January 30, 2008.  ECF No. 11-2 at 16, Tr. 15.  Also, the ALJ found that Ms. Stentz had the following severe impairments as defined by 20 C.F.R. §§ 404.1520(c) and 416.920(c): depression and post-traumatic stress disorder.  *Id*.  However, the ALJ found that Ms. Stentz did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526) and 20 C.F.R. Part 416, Subpart I, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  ECF No. 11-2 at 17, Tr. 16.

Further, the ALJ found that Ms. Stentz had the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: In order to meet ordinary and reasonable employer expectations regarding attendance, work place

1
2
3

> behavior and production, this individual can understand, remember and carry out unskilled, routine and repetitive work of the kind that requires no more than occasional contact with supervisors. This individual can perform work in which direct service to the general public is not required but other contact is not precluded.

4    ECF No. 11-2 at 18, Tr. 17.

5        The VE testified that Ms. Stentz had past relevant work as a home attendant,

6    fast food worker, taxi driver, nurse assistant, and washer of agricultural produce.

7    ECF No. 11-2 at 21, Tr. 20.  The VE also testified that Ms. Stentz "performed the

8    job of washer at the medium exertional level," and that based on her RFC, Ms.

9    Stentz could perform the requirements of a washer.  ECF No. 11-2 at 21, Tr. 20.

10   The ALJ concurred with the VE's testimony as it was consistent with the Directory

11   of Occupation Titles and based on the VE's review of labor market surveys, job

12   analyses, and experience working with employers.  ECF No. 11-2 at 21, Tr. 20.

13       Alternatively, given Ms. Stentz' age, education, work experience, and RFC,

14   the VE testified that there were multiple jobs available in the national economy for

15   an individual sharing her characteristics.  ECF No. 11-2 at 21, Tr. 20.  The ALJ

16   found that Ms. Stentz "is capable of making a successful adjustment to other work

17   that exists in significant numbers in the national economy."  ECF No. 11-2 at 22,

18   Tr. 21.  The ALJ concluded that Ms. Stentz was not under a disability as defined

19   by the Social Security Act.  ECF No. 11-2 at 22, Tr. 21.  Accordingly, Ms. Stentz'

20   application was denied on February 26, 2014.  ECF No. 11-2 at 11, Tr. 10.

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 3

Ms. Stentz filed a request for review by the Appeals Council which was denied on May 11, 2014.  ECF No. 11-2 at 2, Tr. 1.  Ms. Stentz then filed a complaint in the District Court for the Eastern District of Washington on June 4, 2015.  ECF No. 3.  The Commissioner filed an answer to the complaint on September 4, 2015.  ECF No. 10.  The matter is therefore properly before the Court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts of this case are set forth in the administrative hearing transcript and record, ECF No. 11.  Ms. Stentz was born March 18, 1980.  ECF No. 11-5 at 2, Tr. 186.  Ms. Stentz was 32 years old when she applied for DIB and SSI, and 33 years old at the time of the hearing.  *See id.*  Ms. Stentz worked a number of different jobs, including as a washer and caregiver, until 2008.  *See* ECF No. 11-6 at 4, Tr. 202.

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's final decision.  42 U.S.C. § 405(g).  A reviewing court must uphold the Commissioner's decision, determined by an ALJ, when the decision is supported by substantial evidence and not based on legal error.  *See e.g.*, *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402

U.S. 389, 401 (1971) (internal quotation marks omitted).  This standard requires more than a mere scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  "[T]he key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding that claimant is not disabled."  *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).

The trier of fact must resolve conflicting evidence, not the reviewing court.  *Richardson*, 402 U.S at 399.  As such, the reviewing court "may not substitute its judgment" for that of the Commissioner's if the Commissioner's interpretation is rational and supported by substantial evidence in the record. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The reviewing court must consider the entire record, not just the evidence that supports the Commissioner's decision.  *Id.* at 1098 (citing *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)); *see also Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).  Therefore, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229–30 (9th Cir. 1987).

//

//

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 5

### SEQUENTIAL PROCESS

The Social Security Act defines "disability" as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A person is determined to be disabled only if his or her impairments are so severe that they cause an inability to perform previous work, and the individual cannot, considering age, education, and work experience, engage in any other kind of substantial gainful employment that exists in the national economy.  42 U.S.C. § 1382c(a)(3)(B).

The Social Security Administration utilizes a five-step sequential evaluation process for determining whether a claimant is disabled.  20 C.F.R. §§ 404.1520(a) and 416.920(a)).  At step one, the trier of fact determines if the claimant is currently engaged in substantial gainful activity. If the claimant is so engaged, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i) and 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the ALJ determines, under step two, whether the claimant has a medically severe impairment or combination of impairments that meets the twelve month duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(ii).  If claimant does not meet this requirement, he or she will not be considered disabled.  *Id*.

During the third step, the ALJ must consider the medical severity of the impairment or combination of impairments, and compare it to a number of listed impairments that are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii); *see also* 20 C.F.R. §§ 404, Subpt. P, App. 1 and 416, Subpt. I, App. 1. If the impairment or combination of impairments meets or equals one of the listed impairments, the claimant is determined to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii) and 416.920(a)(4)(iii).

Next, the ALJ will assess the claimant's RFC. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a). A claimant's RFC reflects his or her ability to perform work activities despite any physical or mental limitations. *Id*.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to step four, where the ALJ determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If the claimant is able to perform the previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv).

If the claimant cannot perform her previous work, the ALJ considers whether the claimant is able to perform other work in the national economy in view of her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 7

(9th Cir. 1971); *see also* 20 C.F.R. §§ 404.1512(a) and 416.912(a). The claimant

satisfies this burden by establishing that a physical or mental impairment prevents

her from engaging in her previous occupation. *See Rhinehart*, 438 F.2d at 921.

At step five, the burden shifts to the Commissioner to show that the claimant

can perform another substantial gainful activity, and that a "significant" number of

jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*,

722 F.2d 1496, 1498 (9th Cir. 1984). The Commissioner must consider the

claimant's RFC, age, education, and work experience when determining whether

the claimant could adjust to other work. 20 C.F.R. §§ 404.1520(a)(4)(v) and

416.920(a)(4)(v).

## ISSUES

An ALJ's decision must be supported by substantial evidence and free of

legal error. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). Ms. Stentz

alleges the ALJ committed reversible error by (1) improperly rejecting Ms. Stentz'

subjective complaints; (2) improperly rejecting the opinion of an examining

physician; (3) failing to conduct an adequate step four analysis; and (4) failing to

conduct an adequate step five finding. *See* ECF No. 15.

## DISCUSSION

### I.    Credibility Determination

Ms. Stentz argues that the ALJ failed to provide sufficiently "clear and

convincing" reasons for rejecting her subjective complaints. ECF No. 15 at 10–11.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 8

1    Specifically, Ms. Stentz alleges that the ALJ rejected her testimony by improperly

2    determining (1) that her daily activities showed a greater level of functioning than

3    reported and (2) that she engaged in a minimal amount of mental health treatment.

4    *Id*. at 11.

5        The Commissioner contends that the ALJ properly considered the above.

6    ECF No. 16 at 10–11.  Additionally, the Commissioner contends that the ALJ

7    considered Ms. Stentz' lack of compliance with prescribed medication as a

8    separate factor in assessing her credibility.  ECF No. 16 at 11.  Contrary to the

9    Commissioner's position, the ALJ's comments were made immediately subsequent

10   to a statement about Ms. Stentz' engagement in "minimal health treatment."  ECF

11   No. 11-2 at 19, Tr. 18.  Therefore, the Court finds that the ALJ considered Ms.

12   Stentz' alleged discontinuance of treatment as part of the assessment of Ms. Stentz'

13   record of mental health treatment.

14       Further, the Commissioner argues that the ALJ considered the fact that

15   Ms. Stentz turned down work from her family, and stopped working in 2007 when

16   her son was born, as a separate factor in assessing her credibility.  ECF No. 16 at

17   10–11.  The ALJ, when discussing the claimant's daily activities, remarked that

18   "the claimant testified that she was offered jobs by her family but chooses not to do

19   the jobs."  ECF No. 11-2 at 19, Tr. 18.  However, the ALJ did not explain how

20   either of the above facts influenced the ALJ's analysis concerning Ms. Stentz'

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 9

daily activities, and neither fact is otherwise linked to an adverse credibility finding.

### A. Standard for Making Credibility Determination

An ALJ must perform a two-step analysis in determining whether to accept a claimant's subjective testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must decide whether there is an impairment that could reasonably be expected to cause the claimant's symptoms. *Id*. at 1281 n.1; 20 C.F.R. §§ 404.1529(a)–(b) and 416.929(a)–(b). The claimant is only required to show that the impairment "could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2007). Second, the ALJ must consider the claimant's testimony and other evidence to determine the intensity and persistence of the symptoms. *Smolen*, 80 F.3d at 1281 n.1.

When the claimant produces evidence sufficient to satisfy the above, and the ALJ finds no affirmative evidence of malingering, the claimant's testimony cannot be rejected unless the ALJ provides "specific, clear, and convincing reasons for doing so." *Id*. at 1283–84. "Clear and convincing is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in social

security cases.'"[1]  *Garrison*, 759 F.3d at 1015 (citing *Moore v. Comm'r of Soc.*

*Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 1999)).

The ALJ may consider a variety of factors while assessing a claimant's

credibility regarding the severity of his or her symptoms.  *Smolen*, 80 F.3d at 1284.

These may include a claimant's daily activities, unjustified failure to seek or follow

treatment, and prior inconsistent statements.  *Id*. at 1284; *see also Morgan v.*

*Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599–600 (9th Cir. 1999) (ALJ

provided "clear and convincing" reasons where the claimant made numerous

contradictory statements about daily activities and functional limitations).

## B. Daily Activities

Ms. Stentz asserts that the ALJ did not provide sufficiently "clear and

convincing" reasons for concluding that her daily activities demonstrated a greater

level of functioning than reported.  ECF No. 15 at 11.  The ALJ found that

Ms. Stentz had a mild restriction in her daily activities.  ECF No. 11-2 at 17,

Tr. 16.  The ALJ noted that Ms. Stentz performed the following daily activities:

---

[1] The Commissioner argues that the proper standard of review of an ALJ's

credibility determination is "substantial evidence."  ECF No. 16 at 10.  However,

as the Ninth Circuit is clear that the "clear and convincing reasons" standard

governs, the Court is required to apply binding precedent.  *See Garrison*, 759 F.3d

at 1015 n.18.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 11

1    cooking for her family, cleaning the dishes, bathing her children, helping her

2    children get ready for school, taking her children to and from school, attending her

3    children's sporting events, and never neglecting to change her child's diaper.  ECF

4    No. 11-2 at 19, Tr. 18.  The ALJ stated that Ms. Stentz' "responsibilities have been

5    primarily as a stay at home mother, which indicates that she has greater

6    functioning than alleged." *Id*.

7        An adverse credibility finding may be supported with evidence that the

8    claimant engaged in daily activities that were incompatible with the severity of his

9    or her reported symptoms.  *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014)

10   (claimant's daily activities did not contradict symptom testimony where the

11   claimant attended occasional social events and completed basic chores, sometimes

12   with the help of a friend).  While it is correct that the "Social Security Act does not

13   require that claimants be utterly incapacitated to be eligible for benefits . . . and

14   many home activities are not easily transferable to . . . the workplace," activities of

15   daily living may be considered "if a claimant is able to spend a substantial part of

16   his day engaged in pursuits involving the performance of physical functions that

17   *are* transferable to a work setting." *Fair v. Bowen*, 885 F.3d 597, 603 (9th Cir.

18   1989) (emphasis in original); *see also Ghanim*, 763 F.3d at 1165 (ALJ erred in

19   finding that claimant's daily activities damaged credibility as there was no

20   indication that claimant's daily activities occurred during a substantial portion of

21   the day or were transferrable to a work environment); *Orn v. Astrue*, 495 F.3d 625,

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 12

639 (9th Cir. 2007) (concluding that claimant's daily activities did not meet the threshold for transferrable work skills where the claimant read, watched television, and colored).

Many home activities are not transferable to a work environment where the claimant must take breaks to rest or take medication because the claimant will not be able to do so when employed. *See Smolen*, 80 F.3d at 1284 n.7. For example, talking on the phone, preparing meals, cleaning, receiving help with child care, taking long naps, and lying in bed have been found to be consistent with both "the pain [claimant] described in her testimony" and "an inability to function in a workplace environment." *Garrison*, 759 F.3d at 1016.

When considering Ms. Stentz' daily activities, the ALJ failed to account for Ms. Stentz' testimony regarding the assistance she receives from family members. For example, Ms. Stentz' mother helps take care of the children. ECF No. 11-2 at 66, Tr. 65. Also, Ms. Stentz' husband is home by 1:00 p.m. every day and is available to assist her. ECF No. 11-2 at 36, Tr. 35. Ms. Stentz testified that she gets assistance with scheduling her children's doctor appointments, and taking them to school. ECF No. 11-2 at 46, 48, Tr. 45, 47. Further, Ms. Stentz stated that her mother and husband telephone her in the morning until she wakes up. ECF No. 11-2 at 66, Tr. 65. If she fails to answer, her mother will come over to the house to wake her and the children. *Id*. Also, Ms. Stentz testified that her husband usually drives her around, and that driving by herself is difficult. ECF No. 11-2 at

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 13

35, Tr. 34.  Similarly, Dr. Gomes noted that Ms. Stentz was dropped off at her appointment by her husband because she gets scared when going to new places. ECF No. 11-7 at 64, Tr. 339.

The ALJ also failed to take into account Ms. Stentz' testimony regarding a typical day in her life, where Ms. Stentz noted that she takes a nap after her children leave for school, and that she also naps or rests throughout the mid-afternoon until her children return home.  ECF No. 11-2 at 66, Tr. 65.  Further, Ms. Stentz stated that she "mostly just slept" during the day, and has a hard time going to sleep and getting up "at the right time[s]."  ECF No. 11-2 at 63, 65, Tr. 62, 64.

In the Ninth Circuit, child care and minimal household chores are not activities of daily living readily transferable to a work environment when a claimant receives substantial assistance or needs to frequently rest.  *See Garrison*, 759 F.3d at 1016.  Here, the ALJ failed to take into account Ms. Stentz' testimony that she is provided with a substantial amount of help in completing the noted daily activities, and needs to rest and nap throughout the day.

As the ALJ failed to consider critical factors concerning Ms. Stentz' daily activities, the Court finds that the ALJ did not reasonably conclude that those activities detracted from Ms. Stentz' credibility.  In consideration of the need for both considerable assistance and frequent rest periods, Ms. Stentz' activities do not reasonably transfer to a work environment.  Therefore, the ALJ erred when

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 14

1  improperly utilizing Ms. Stentz' daily activities to discredit her symptom

2  testimony.

3       **C. Mental Health Treatment**

4       As part of the credibility determination, the ALJ considered Ms. Stentz'

5  history of mental health treatment.  The ALJ noted that the minimal amount of

6  mental health treatment received by Ms. Stentz suggested that she was

7  exaggerating the degree of limitation arising from her symptoms.  ECF No. 11-2 at

8  19, Tr. 18.  Similarly, the ALJ found that Ms. Stentz' "marijuana use is the only

9  measure toward improving symptoms that she has taken [since July 2012], and

10  [inferred] from that that marijuana use alleviates her symptoms to the point that

11  they are not debilitating.  Otherwise, the claimant would have sought other or

12  additional help."  ECF No. 11-2 at 16–17, Tr. 15–16.  The ALJ determined that

13  Ms. Stentz had recorded psychiatric hospitalizations.  ECF No. 11-2 at 18, Tr. 17.

14  Further, the ALJ noted that while Ms. Stentz had reported that Prozac helped

15  alleviate her depression and anxiety symptoms, she stopped taking the medication

16  for unknown reasons.  ECF No. 11-2 at 19, Tr. 18.  The ALJ also documented that

17  Ms. Stentz failed to take her medication regularly when she restarted Prozac in

18  August 2008.  ECF No. 11-2 at 19–20, Tr. 18–19.

19       Ms. Stentz argues that she did not seek mental health treatment because she

20  was both uninsured and struggling financially during the relevant time period.

21  ECF No. 15 at 13.  However, the ALJ did not find Ms. Stentz' explanation credible

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 15

as Ms. Stentz testified that she was able to purchase marijuana at a significantly

greater cost per month than insurance premiums.  ECF 11-2 at 20, Tr. 19; ECF

No. 11-2 at 55, Tr. 54 (claimant reported that she spent twenty dollars per day on

marijuana and that her insurance premium would have been two hundred and

seventy eight dollars per month).

In the Ninth Circuit, "when the record affords a compelling reason to view

such departures from prescribed treatment as part of claimants' underlying mental

afflictions" that claimant will not be punished by being discredited.  *Garrison*, 759

F.3d at 1018 n.24 ("[I]t is questionable practice to chastise one with [a] mental

impairment for the exercise of poor judgment in seeking rehabilitation.").  As such,

a claimant's symptom testimony cannot be rejected if there is evidence of a

reasonable justification for not maintaining or seeking treatment.  *Smolen*, 80 F.3d

at 1284 (claimant's reasons for stopping treatment were reasonable where claimant

stopped taking medication for chronic fatigue and pain due to lack of insurance and

financial ability); *Orn*, 495 F.3d at 635–39 (ALJ's inference that large gaps in

treatment suggested symptoms were not as severe as alleged was not "clear and

convincing" where claimant had explained failure to seek treatment because of

gaps in insurance coverage and lack of financial resources). *But see Burch v.

Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (ALJ was "permitted to consider lack

of treatment in [the] credibility determination" where the claimant had not engaged

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 16

1    in any treatment for months, which was "powerful evidence" regarding the severity

2    of the alleged symptoms).

3        The Court finds that the ALJ provided a reasonable justification for finding

4    that Ms. Stentz lacked credibility in relation to her failure to seek treatment.

5    Ms. Stentz uses two grams, or twenty dollars, of marijuana per day.  ECF No. 11-2

6    at 55, Tr. 54.  Ms. Stentz also reported that insurance coverage would cost her two

7    hundred and seventy eight dollars per month.  *Id*.  Therefore, the ALJ found that

8    Ms. Stentz' explanation lacked credibility as she had the financial ability to afford

9    marijuana at a substantially greater cost per month than available health insurance.

10    ECF No. 11-2 at 20, Tr. 19; *see Smolen*, 80 F.3d at 1284 (claimant's lack of

11    insurance, or financial inability may provide clear and convincing reasons to

12    explain a lack of treatment).  The ALJ's finding that Ms. Stentz failed to provide a

13    reasonable justification for failing to seek treatment was reasonable, and the Court

14    therefore must defer to the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359

15    F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to

16    more than one rational interpretation, [the Court] must defer to the ALJ's

17    conclusion.").

18        **E. Error Analysis**

19        In sum, the Court finds that the ALJ erred by inadequately addressing

20    Ms. Stentz' daily activities in the credibility analysis.  "A decision of the ALJ will

21    not be reversed for errors that are harmless."  *Burch*, 400 F.3d at 679. An error is

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 17

harmless when it is "inconsequential to the ultimate non-disability determination." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (internal quotation marks omitted). "[T]he relevant inquiry . . . is not whether the ALJ would have made a different decision absent the error . . . [but] is whether the ALJ's decision remains legally valid, despite such error." *Id.*

The Court concludes that the ALJ's error was harmless because the ALJ permissibly considered the following factors in the credibility analysis: (1) Ms. Stentz' testimony regarding her inability to afford health insurance; and (2) Ms. Stentz' record of mental health treatment. Although Ms. Stentz has proffered alternative explanations, the ALJ's inferences were reasonable, therefore the Court must defer to the ALJ's findings. *See Batson*, 359 F.3d at 1198. The Court finds that the above provide sufficiently "clear and convincing" reasons for rejecting Ms. Stentz' testimony regarding the severity of her symptoms. As such, the Court finds that the ALJ did not commit reversible error when finding Ms. Stentz not fully credible.

//

//

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 18

## II.    Rejection of Medical Opinion Evidence

Ms. Stentz asserts that the ALJ improperly rejected her examining provider's opinion based upon the ALJ's determination that it was largely based on Ms. Stentz' self-reports and was not objectively supported.  ECF No. 15 at 7.  The Commissioner argues that the ALJ permissibly gave little weight to the examining provider, and greater weight to the two State agency consultants.  ECF No. 16 at 4.  Also, the Commissioner contends that the ALJ relied upon an internal inconsistency in the examining provider's treatment notes, which undermined the medical opinion that Ms. Stentz could not maintain employment.  *Id.* at 6.

### A. Standard for Rejecting Medical Opinion

As part of the disability determination, the ALJ must consider the opinions of the claimant's medical providers.  20 C.F.R. §§ 404.1527(b) and 416.927(b).  An ALJ may consider the opinions of three types of physicians: treating; examining; and non-examining.  *Garrison*, 759 F.3d at 1012.  The ALJ must give the greatest weight to testimony offered by a treating physician.  *Id*.  Factors that may be considered in weighing the evidentiary value of a medical opinion include: (1) the type of doctor; (2) the amount of relevant evidence in support of the opinion; (3) consistency with the record as a whole; (4) whether the opinion is from a specialist; and (5) any other factors deemed relevant.  20 C.F.R. §§ 404.1527(c)(1)–(6) and 416.927(c)(1)–(6).

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 19

1    Where a treatment physician's opinion is uncontroverted, the ALJ must find

2    "clear and convincing" reasons to reject that opinion.  *Smolen*, 80 F.3d at 1285; *see*

3    *also Garrison*, 759 F.3d at 1012 (same standard for rejecting the opinions of

4    examining physicians).  However, "specific and legitimate" reasons are sufficient

5    to reject a controverted opinion when supported by substantial evidence for doing

6    so.  *But see Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995) ("The opinion of

7    a nonexamining physician cannot by itself constitute substantial evidence that

8    justifies the rejection of the opinion of either an examining physician *or* a treating

9    physician.").  To support a decision with substantial evidence, an ALJ must

10   provide a "detailed and thorough summary of the facts and conflicting clinical

11   evidence, stating [the] interpretation thereof, and making findings."  *Garrison*, 759

12   F.3d at 1012 (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

13   An ALJ commits error if the ALJ rejects a medical opinion "without

14   explanation that another medical opinion is more persuasive or criticizing with

15   boilerplate language that fails to offer a substantive basis" for the rejection.  *Id.* at

16   1012–13; *see also Ghanim*, 763 F.3d at 1162–63 (ALJ's decision to discount a

17   medical opinion not supported by substantial evidence where the record revealed a

18   small improvement in symptoms, limited capacity to perform chores, and some

19   reliance by doctor on self-reports).

20   //

21   //

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 20

**B. Dr. Manuel Gomes, Ph.D.**

Dr. Manuel Gomes evaluated Ms. Stentz on July 8, 2012.  ECF No. 11-7 at 64, Tr. 339.  Dr. Gomes diagnosed Ms. Stentz with chronic posttraumatic stress disorder and generalized anxiety disorder.  ECF No. 11-7 at 69, Tr. 344.  Dr. Gomes also recorded a Global Assessment Function (GAF) score of 45.[2]  *Id*.  "[A] GAF score between 41 and 50 describes 'serious symptoms' or 'any serious impairment in social, occupational, or school functioning.'"  *Garrison*, 759 F.3d at 1002 n.4.  Dr. Gomes found that Ms. Stentz was not impaired in her ability to perform simple, repetitive tasks, or detailed complex tasks.  ECF No. 11-7 at 70, Tr. 345.  Additionally, Dr. Gomes did not note any cognitive or memory deficits during Ms. Stentz' mini-mental status exam.  *Id*.  However, Dr. Gomes opined that Ms. Stentz is moderately impaired in her ability to work with others and interact with the public, slightly impaired in her ability to operate independently, and significantly impaired in her ability to manage workplace stressors.  *Id*.  Also, Dr. Gomes opined that Ms. Stentz is "markedly impaired to maintain regular

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."  *Garrison*, 759 F.3d at 1002 n.4 (citing *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998)).

1    workplace attendance for any duration" because she is "unable to manage working

2    consistently for long periods." *Id.*

3        **1. Reliance on Self-Reports**

4        The ALJ gave little weight to Dr. Gomes' opinion because it was "largely

5    based on [Ms. Stentz'] self-report . . . ." ECF No. 11-2 at 20, Tr. 19.  The ALJ

6    relied on the prior determination that the claimant's allegations were not fully

7    credible, citing to the fact that she has "failed to engage in regular mental health

8    treatment and relies only on the use of marijuana to control her symptoms." *Id.*

9        Ms. Stentz contends that the ALJ erroneously concluded that Dr. Gomes

10   largely relied on Ms. Stentz' self-reports.  ECF No. 15 at 8.  Moreover, Ms. Stentz

11   argues that the ALJ failed to adequately explain how the ALJ reached that

12   conclusion.  *Id.*  The Commissioner argues that Dr. Gomes' reliance on Ms. Stentz'

13   self-reports of her inability to maintain attendance was clear based on Dr. Gomes'

14   report.  ECF No. 16 at 6.

15       Where the ALJ has found the claimant not fully credible, the ALJ may reject

16   a medical opinion that relies, to a large extent, on the claimant's self-reports as

17   opposed to objective clinical evidence.  *Ghanim*, 763 F.3d at 1162 (finding the

18   ALJ's rejection of medical opinion not supported by substantial evidence where

19   ALJ failed to articulate basis for conclusion that opinion more heavily based on

20   claimant's self-report); *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1200

21   (9th Cir. 2008) (finding that the record did not support the ALJ's conclusion that

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 22

1    the medical expert relied on self-reports more heavily than on his own clinical

2    observations in reaching the conclusion that the claimant was incapable of

3    maintaining a regular work schedule).

4        The Court finds that Dr. Gomes did not heavily rely on Ms. Stentz' self-

5    reports when forming his medical opinion.  Contrary to the ALJ's finding,

6    Dr. Gomes relied upon objective measures to develop his opinion, such as the

7    mental status examination, and the Global Assessment of Functioning (GAF) in

8    which Dr. Gomes gave Ms. Stentz a score of 45.  ECF No. 11-7 at 67–68, Tr. 342–

9    43; *see Garrison*, 759 F.3d at 1002 n.4 ("[A] GAF score between 41 and 50

10   describes 'serious symptoms' or 'any serious impairment in social, occupational,

11   or school functioning.'").

12       The ALJ refers to some of the objective measures Dr. Gomes used, such as

13   Ms. Stentz' ability to:  (1) recall objects after five minutes; (2) recall five digits

14   forward and three digits backward; and (3) spell forward and backward.  ECF No.

15   11-2 at 18, Tr. 17.  Dr. Gomes noted that Ms. Stentz had difficulty adding and

16   subtracting by serial sevens.  ECF No. 11-7 at 68, Tr. 343.  The ALJ also

17   mentioned this finding in the opinion.  ECF No. 11-2 at 18.

18       As Dr. Gomes relied on objective findings, the Court concludes that the

19   ALJ's determination that Dr. Gomes' opinion was largely based on Ms. Stentz'

20   self-reports is neither a reasonable interpretation of Dr. Gomes' opinion nor

21   supported by substantial evidence in the record.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 23

**2. Internal Inconsistency**

The ALJ also gave little weight to Dr. Gomes' opinion because it was "inconsistent with his own treatment notes that indicated no issues were noted with the claimant's ability to concentrate, maintain persistence or pace." ECF No. 11-2 at 20, Tr. 19. The ALJ stated that Dr. Gomes reported that Ms. Stentz was moderately impaired in her ability to work with others and interact with the public, and was markedly impaired in maintaining workplace attendance for any duration. *Id*. Based on this, the ALJ determined Dr. Gomes' opinion was inconsistent "with his own treatment notes that indicated no issues were noted with the claimant's ability to concentrate, maintain persistence, or pace." *Id*.

Ms. Stentz argues that Dr. Gomes' treatment notes did not contradict his medical opinion because it was "based on moderate impairments in her ability to work with others; marked impairment in her ability to maintain regular attendance; and significant impairment in her ability to handle workplace stressors." ECF No. 17 at 3. The Commissioner contends that Dr. Gomes' medical opinion that Ms. Stentz could not maintain a job was not supported by his treatment note that there were no issues with Ms. Stentz' concentration, persistence, or pace, as well as findings from her mental status examination. ECF No. 16 at 6.

The Court finds that the ALJ's conclusion that Dr. Gomes' medical opinion was internally inconsistent is neither a reasonable interpretation of Dr. Gomes' opinion nor supported by substantial evidence in the record. Dr. Gomes' opinion

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 24

that Ms. Stentz is markedly impaired in her ability to maintain workplace

attendance cannot be reasonably interpreted to conflict with his treatment note

indicating that Ms. Stentz has no problems with concentration, persistence, or pace

because they are unrelated.  Concentration, persistence, and pace relate to a

person's ability to maintain a task over a period of time, whereas the ability to

maintain regular attendance only relates to a person's punctuality.

Therefore, the ALJ erred in giving little weight to Dr. Gomes' medical

opinion because the ALJ's finding that Dr. Gomes' opinion was internally

inconsistent was not supported by substantial evidence.

### 3. Inconsistency with Objective Medical Evidence

Ms. Stentz argues that Dr. Gomes' opinion should be given greater weight

than the non-examining doctors because he is the only examining provider.  ECF

No. 15 at 9.  The Commissioner claims that the ALJ appropriately considered and

accepted the non-examining doctors' opinions because "they were more consistent

with the record as a whole, including [Ms. Stentz'] activities of daily living and Dr.

Gomes' examination."  ECF No. 16 at 8.

The ALJ did not state what part of Dr. Gomes' opinion was not objectively

supported.  The ALJ gave great weight to the opinions of two psychological

consultants, Dr. Diane Fligstein and Dr. Jerry Gardner, because the ALJ found that

the opinions were "consistent with [Ms. Stentz'] activities and her performance on

the mental status examination in July 2012."  ECF 11-2 at 20, Tr. 19.  The ALJ

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 25

noted that Dr. Fligstein found that Ms. Stentz could "perform simple and complex tasks and could persist the majority of the time . . . and would work best when not interacting significantly with the general public." *Id*. The ALJ also noted that Dr. Gardner "affirmed that opinion." *Id*. The opinions of Dr. Fligstein and Dr. Gardner were the only other objective medical evidence in the record concerning Ms. Stentz' mental health.

Generally, a treating or examining doctor's opinion should be given the greatest weight. *See Garrison*, 759 F.3d at 1012. A non-examining doctor's opinion cannot be used to reject the opinion of an examining doctor because it does not qualify as substantial evidence on its own. *See Lester*, 81 F.3d at 831.

Dr. Gomes is the only examining doctor on record. The ALJ noted that Dr. Gomes found that Ms. Stentz has no impairment related to "perform[ing] simple and repetitive tasks or . . . performing detailed and complex tasks." ECF No. 11-2 at 20, Tr. 19. The ALJ also stated that Dr. Gomes opined that Ms. Stentz "could accept instructions from supervisors." *Id*. Similarly, the ALJ noted that non-examining physicians Drs. Fligstein and Gardner opined that Ms. Stentz "could perform simple and complex tasks." *Id*. The ALJ also noted that Dr. Gomes opined that Ms. Stentz is "moderately impaired to work with others and interact with the general public." *Id*. Dr. Fligstein also opined that Ms. Stentz "is capable of superficial work related interaction with coworkers and supervisors and would work best when not interacting significantly with the general public." *Id*.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 26

1    However, Dr. Fligstein opined that Ms. Stentz "could persist the majority of

2    the time." *Id*. Whereas Dr. Gomes opined that Ms. Stentz "is markedly impaired

3    to maintain regular workplace attendance for any duration." *Id*. Further,

4    Dr. Gomes found Ms. Stentz is "unable to manage working consistently for long

5    periods," ECF No. 11-7 at 70, Tr. 345, whereas Dr. Fligstein found Ms. Stentz is

6    capable of working, ECF No. 11-3 at 20, Tr. 89, as did Dr. Gardner.  ECF No. 11-3

7    at 33, Tr. 102.

8    Although, as noted, specific opinions do conflict, an examining doctor's

9    opinion cannot be rejected solely based upon a non-examining doctor's opinion.

10   *See Lester*, 81 F.3d at 831; *see also Morgan*, 169 F.3d at 602 ("The opinion of a

11   nonexamining medical advisor cannot by itself constitute substantial evidence that

12   justifies the rejection of the opinion of an examining or treating physician.").

13   Dr. Gomes' opinion, therefore, cannot be rejected solely based upon the opinions

14   of Dr. Fligstein and Dr. Gardner without other supporting evidence.  As the ALJ

15   failed to note other "objective medical evidence" that discredits Dr. Gomes'

16   opinion, the ALJ determination is not supported by substantial evidence in the

17   record.

18   **C. Conclusion**

19   The ALJ gave little weight to Dr. Gomes' opinion because the ALJ found it

20   largely relied on self-reports, it was not objectively supported, and it was internally

21   inconsistent.  ECF No. 11-2 at 20, Tr. 19.  As noted above, none of these rationales

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 27

1  are supported by substantial evidence in the record.  Therefore, the Court finds the

2  ALJ erred by giving little weight to Dr. Gomes' medical opinion.

3  **III.        Step Four Determination of Residual Functional Capacity**

4          At step four the claimant must show that they cannot perform their past

5  relevant work.  *Pinto v. Massanari*, 249 F.3d 840, 843 (9th Cir. 2001).  The VE

6  testified that Ms. Stentz could perform her prior job as a washer of agricultural

7  produce.  ECF 11-2 at 21, Tr. 20.  The ALJ agreed that Ms. Stentz could work as a

8  washer as actually and generally performed after comparing her RFC and the

9  specific demands of that job.  *Id*.

10          Ms. Stentz alleges that the ALJ did not conduct a proper step four analysis

11  because the ALJ did not include all of her limitations in the RFC finding, did not

12  identify specific demands of her past relevant work, and did not properly compare

13  specific demands of past work with specific functional limitations.  ECF No. 15 at

14  14–15.  The Commissioner argues that the ALJ did not err in conducting the step

15  four analysis and that the ALJ adequately compared the requirements of

16  Ms. Stentz' past relevant work to Ms. Stentz' limitations.  ECF No. 16 at 14–15.

17          The ALJ must take into account all of the claimant's impairments to

18  determine that claimant's RFC.  20 C.F.R. §§ 404.1545(a)(2) and 416.945(a)(2);

19  *Ghanim*, 763 F.3d at 1166 (ALJ erred in determining RFC because ALJ

20  improperly discounted medical opinion and claimant's testimony); *Reddick*, 157

21  F.3d at 724–25 (RFC was not supported by substantial evidence because ALJ

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 28

1    failed to account for effects of fatigue on ability to work).  At step four, the ALJ

2    only needs to determine whether the claimant can or cannot continue to perform

3    his or her past relevant work.  *Pinto*, 249 F.3d at 845.  The ALJ must find that the

4    claimant is able to perform "actual functional demands and job duties of a

5    particular past relevant job or . . . functional demands and job duties of the

6    occupation as generally required by employers throughout the national economy."

7    *Id.*

8            The claimant still carries the burden of proof at step four, however, the ALJ

9    has a duty to make factual findings.  *Id*. at 844 (remanding where the ALJ failed to

10   explain how claimant could perform past relevant work as generally performed).

11   The Ninth Circuit has "never required explicit findings at step four regarding

12   claimant's past relevant work both as generally performed and as actually

13   performed." *Id*. at 845.  However, the Ninth Circuit has noted the difficulty in

14   reviewing an ALJ's decision where "the ALJ made very few findings and relied

15   largely on the conclusions of the [VE]." *Id*. at 847.

16          An ALJ's decision will not be reversed for harmless errors.  *Burch*, 400 F.3d

17   at 679. An error is harmless when it is "inconsequential to the ultimate non-

18   disability determination." *Stout*, 454 F.3d at 1055.  Also, the decision must remain

19   legally valid despite the error.  *Carmickle*, 533 F.3d at 1162.

20          As previously noted, the ALJ committed reversible error when giving little

21   weight to Dr. Gomes' opinion.  Thus, the RFC determination did not account for

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 29

all of Ms. Stentz' impairments because it excluded Ms. Stentz' marked limitation in maintaining regular workplace attendance.  As a result the RFC was flawed and not supported by substantial evidence in the record.

Further, the Court finds that the step four error was not harmless because it significantly impacted the ALJ's determination that Ms. Stentz was not disabled. Although the ALJ did not need to make specific findings regarding Ms. Stentz' past relevant work, the ALJ was required to explain how Ms. Stentz' limitations related to the ALJ's finding that she could perform her past relevant work as generally and actually performed.  *See Pinto*, 249 F.3d at 845–47.  Similarly, the ALJ erred by failing to explain how Ms. Stentz' limitations related to the finding that Ms. Stentz could perform her past relevant work as generally and actually performed.  Therefore, the Court finds that the opinion of the VE that Ms. Stentz has the RFC to perform past relevant work has no evidentiary value, and the ALJ committed reversible error because the RFC determination was "consequential" to the ALJ's nondisability determination.

## IV.    Step Five Hypothetical

The ALJ posed the following hypothetical to the VE:

> I would like you to assume a hypothetical individual of the claimant's age and with a GED.  Further assume that this individual is limited to work at all exertional levels, except that in order to meet ordinary and reasonable employer expectations regarding attendance, workplace behavior and production.  This individual can understand, remember and carry out unskilled, routine and repetitive work of the kind that requires no more than occasional contact with supervisors.  This

individual can work in proximity to coworkers, but not on a team or cooperative effort. This individual can perform work in which direct service to the general public is not required, but other contact is not precluded.

ECF No. 11-2 at 68, Tr. 67. The VE responded that such an individual could perform other jobs including work as a cleaner (industrial and housekeeping), and assembler in production. ECF No. 11-2 at 69, Tr. 68. The ALJ then asked the VE if the VE had an opinion about "employer tolerances for absenteeism and especially at the unskilled level of work . . . ." *Id*. The VE responded that the employers will tolerate one missed day per month or twelve per year. *Id*.

Ms. Stentz argues that the ALJ's hypothetical was incomplete because it did not include Dr. Gomes' opinion concerning her limitations, and as such, had no evidentiary value. ECF No. 15 at 15–16. The Commissioner contends that the hypothetical question that the ALJ posed to the VE was complete because the ALJ had properly rejected Dr. Gomes' opinion. ECF No. 16 at 16.

At step five, the burden of proof shifts to the Commissioner to show that the claimant can perform other types of work that exist in the national economy given that claimant's RFC, age, education, and work experience. *Smolen*, 80 F.3d at 1289. The ALJ may elicit VE testimony using a hypothetical that contains all limitations the ALJ has found credible and supported by substantial evidence on the record. *Ghanim*, 763 F.3d at 1166. However, when the hypothetical omits some of the claimant's limitations the VE's testimony has no evidentiary value. *Id*.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 31

1  (ALJ erred by relying on VE testimony where ALJ improperly formulated the

2  claimant's RFC).

3       As discussed above, the ALJ erred by giving little weight to Dr. Gomes'

4  medical opinion.  As the RFC, and subsequent hypothetical posed to the VE, failed

5  to incorporate Dr. Gomes' opined marked limitation regarding attendance, both

6  were flawed and not supported by substantial evidence in the record.  The VE's

7  testimony that employers will tolerate one missed day per month or twelve per year

8  does not repair the ALJ's incomplete hypothetical, which did not include

9  Dr. Gomes' opinion that Ms. Stentz is "markedly impaired to maintain regular

10  workplace attendance for any duration."  *See* ECF 11-2 at 69–70, Tr. 68–69.

11       Therefore, the Court finds that the opinion of the VE that Ms. Stentz has the

12  ability to adjust to other work available in significant numbers in the national

13  economy has no evidentiary value, and the ALJ committed reversible error in

14  relying upon the VE's opinion.

15  **V.    Remand for Further Proceedings**

16       Ms. Stentz encourages this Court to reverse for the immediate award of

17  benefits if the ALJ committed a reversible error.  ECF No. 15 at 16–17.  A district

18  court has discretionary power "to reverse or modify an administrative decision

19  without remanding the case for further proceedings."  *Harman v. Apfel*, 211 F.3d

20  1172, 1178 (9th Cir. 2000).  The Ninth Circuit has noted:

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 32

[i]f the reviewing court determines 'that the agency erred in some respect in reaching a decision to deny benefits,' and the error was not harmless, sentence four of § 405(g) authorizes the court to 'revers[e] the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing . . . [W]hen the record before the agency does not support the agency action, . . . the agency has not considered all relevant factors, or… the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare cases, is to remand to the agency for additional investigation or explanation.[3]

*Treichler*, 775 F.3d at 1099 (internal quotation marks omitted). The Ninth Circuit applies a three step standard to "deduce whether this is one of the rare circumstances where we may decide not to remand for further proceedings." *Id.* at 1103. This "credit-as-true" rule is "designed to achieve fairness and efficiency." *Garrison*, 759 F.3d at 1019. The credit-as-true rule applies to both claimant testimony and medical opinions. *Id.* at 1020.

Under the first step, the Court must determine whether "the ALJ has failed to provide legally sufficient reasons for rejecting . . . claimant testimony."

---

[3] The Commissioner asserts that the credit-as-true rule is an incorrect view of the law. ECF No. 16 at 19. However, the Ninth Circuit has made clear that the credit-as-true rule is valid, and that when each element of the credit-as-true rule is met the Court may depart from the ordinary remand rule. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101–1102 (9th Cir. 2014). As such, this Court is required to apply the binding precedent.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 33

1  *Treichler*, 775 F.3d at 1103 (internal quotation marks omitted).  As noted above,

2  the Court concludes that the ALJ did not provide legally sufficient reasons for

3  rejecting Dr. Gomes' medical opinion.

4         Under the second step, the Court must "turn to the question [of] whether

5  further administrative proceedings would be useful."  *Id*.  At this point, the Court

6  considers "whether the record as a whole is free from conflicts, ambiguities, or

7  gaps, whether all factual issues have been resolved, and whether claimant's

8  entitlement to benefits is clear under the applicable legal rules."  *Id*. at 1103–04.

9  Dr. Gomes, an examining physician, opined that Ms. Stentz suffers a marked

10  limitation in her ability to maintain consistent work attendance.  ECF No. 11-7 at

11  70, Tr. 345.  Only non-examining physicians, Drs. Fligstein and Gardner, offer

12  contrary conclusions. *See Morgan*, 169 F.3d at 602 ("The opinion of a

13  nonexamining medical advisor cannot by itself constitute substantial evidence that

14  justifies the rejection of the opinion of an examining or treating physician.").

15         In this case, there are significant factual conflicts in the record concerning

16  Ms. Stentz' testimony regarding impairments to her ability to maintain workplace

17  attendance.  Ms. Stentz testified that her family gave her a job care giving, but that

18  she "couldn't even show up on time to take care of [her] own grandmother."  ECF

19  No. 11-2 at 54, Tr. 53.  Similarly, Ms. Stentz testified that she could not show up

20  on time, and was not meeting the work schedule required by her family's car

21  detailing business.  ECF No. 11-2 at 61, 64, Tr. 60, 63.  She also testified that she

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 34

1   has difficulties waking up in the morning, ECF No. 11-2 at 64–66, Tr. 63–65, and

2   that her children are consistently late to school.  ECF No. 11-2 at 46–47, Tr. 45–

3   46.  However, her children have no truancy issues.  ECF No. 11-2 at 47, Tr. 46.

4        The Court finds that there is a factual discrepancy regarding whether

5   Ms. Stentz has an attendance limitation that significantly impact her ability to find

6   and sustain gainful employment. As this factual conflict is directly related to

7   Ms. Stentz' alleged disabling limitations, the Court concludes that further

8   proceedings are necessary to resolve any ambiguity in the record.

9        Under the third step, the Court must determine whether, "if the improperly

10  discredited evidence were credited as true, the ALJ would be required to find the

11  claimant disabled on remand." *Garrison*, 759 F.3d at 1020.  To "[r]emand for

12  further administrative proceedings is appropriate if enhancement of the record

13  would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).  The

14  Ninth Circuit clarified that a remand for an immediate award of benefits is

15  appropriate "in the unusual case in which it is clear from the record that the

16  claimant is unable to perform gainful employment in the national economy, even

17  though the vocational expert did not address the precise work limitations

18  established by the improperly discredited testimony." *Id*. at 594–95.

19  //

20  //

21

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 35

The Court need not reach the third step because further administrative proceedings are necessary to resolve the conflicts and ambiguities in the record. As such, the Court remands Ms. Stentz' social security and disability application to the agency for further proceedings.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED IN PART**.

2. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **DENIED**.

3. This case is **REMANDED** to the Commissioner for a *de novo* hearing before the Social Security Administration.

4. **UPON REMAND**, the ALJ will conduct a *de novo* hearing and issue a new decision that is consistent with the applicable law set forth in this Order. The ALJ will, if necessary, further develop the record, reassess the claimant's residual functional capacity, obtain supplemental evidence from a vocational expert, and re-evaluate the claimant's credibility.

5. **JUDGMENT** shall be entered for the Plaintiff.

The District Court Clerk is directed to enter this Order, enter judgment accordingly, provide copies to counsel, and to **close this file**.

**DATED** this 5th day of April 2016.

*s/ Rosanna Malouf Peterson*

ROSANNA MALOUF PETERSON
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS ~ 36